```
          IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

TETHYS HEALTH VENTURES, LLC,

    Plaintiff,

    v.                                    CIVIL NO.: WDQ-11-2761

ZURICH AMERICAN INSURANCE CO.,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Tethys Health Ventures ("Tethys") sued Zurich American Insurance Company ("Zurich") for breach of contract and unjust enrichment. For the following reasons, Tethys's motion to dismiss the remaining claims will be denied. By agreement of the parties, Count I will be dismissed; for reasons stated in this memorandum opinion, it will be without prejudice.

I.  Background[1]

Tethys "provides managed care organizations with transplant risk management and government program advocacy" and sells HMO excess insurance. ECF No. 1 ¶1. Zurich sells insurance and reinsurance to managed care organizations. Id. ¶2.

---

[1] For the motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). A court may consider documents referenced in and relied on by the complaint on a 12(b)(6) motion without converting it into a motion for summary judgment. *Md. Minority Contractor's Ass'n, Inc. v. Md. Stadium Auth.*, 70 F. Supp. 2d 580, 592 n.5 (D. Md. 1998), *aff'd* 198 F.3d 237 (4th Cir. 1999).

On August 1, 2006, Tethys and Zurich entered a Program Administrator Agreement ("PA Agreement"), in which Tethys agreed to provide Program Administrator services to Zurich. *Id.* ¶6. Tethys would market its management and advocacy services, and Zurich's excess insurance, to managed care organizations; Zurich would insure transplant costs and provide excess insurance. *Id.* ¶7. Tethys marketed the products to self-funded employer groups ("SEG's") and health maintenance organizations ("HMO's"). *Id.* ¶8.

Under Appendix B of the PA Agreement, Zurich and Tethys would negotiate--in good faith--Tethys's commissions on premiums received from managed care organizations and HMO reinsurance "if the Subject Business is produced by the Program Administrator," on a case by case basis, up to 17.5% of the premium.[2] *Id.* ¶¶7,

---

[2] "Subject Business" is defined in Appendix A to the PA agreement, which states:

> The authority granted to the Program Administrator by the Company [i.e., Zurich] pursuant to this Agreement is applicable to and limited as follows:
>
> I.   Class of business, lines of business or types of risks, hereafter "Subject Business"
>
> - HMO Reinsurance
> - Managed Transplant Reinsurance
> - Zurich Transplant Services for Self-Funded Employer Groups.
>
> The Subject Business generally includes Medicare and Medicaid eligibility services provided by the Program

19. The amount of the commission on HMO reinsurance had to be approved in writing by Zurich. *Id.*

Appendix A states that the Tethys is to "solicit the Subject Business directly from managed care organizations . . . or through the Company's partner brokers or distributors." ECF No. 14-2 Appendix A § III.

In early 2009, Tethys "successfully introduced" Zurich to Presidio Reinsurance Groups, which markets reinsurance to managed care organizations, including HMO's. ECF No. 1 ¶18. Presidio and Zurich agreed to market Tethys's transplant risk management and government advocacy services, and share insurance transplant risk. They would also market Tethys's government advocacy and excess reinsurance services, and share excess reinsurance risk. *Id.* At Tethys's suggestion, Zurich enlisted Presidio to market and broker tens of millions of dollars of HMO reinsurance for Zurich. *Id.* ¶18. Tethys was not allowed to administer that business and has received no commissions from Presidio business. *Id.* ¶20.

---

    Administrator that will be marketed in conjunction with the Subject Business or any combination thereof.

    The Subject Business will be a unique product offering of the Program Administrator that is not intended to compete directly with any of the Company's existing products or distribution platforms.

ECF No. 14-2 Appendix A § I.

The PA Agreement stated that after termination, Tethys was to continue to receive commissions ("Expirations") from "business written pursuant to [the PA] Agreement." *Id.* ¶¶10, 12.

On August 5, 2011, Zurich gave notice that it would terminate the PA Agreement in 180 days, on February 10, 2012. *Id.* ¶9. It has not paid Expirations on the Presidio accounts to Tethys. *Id.* ¶20.

On September 26, 2011, Tethys sued Zurich for breach of contract (count I), quantum meruit or unjust enrichment (count II), and declaratory judgment (counts III and IV). ECF No. 1.

On November 18, 2011, Zurich moved to dismiss the complaint for failure to state a claim. ECF No. 14. Zurich opposed the motion, ECF No. 17, and Tethys filed a reply in support, ECF No. 18. Tethys moved to strike the reply, or in the alternative for leave to file a surreply. ECF No. 19. On April 30, 2012, the Court construed the motion as an unopposed motion for leave to file a surreply[3] and granted it. ECF No. 23.

On December 5, 2011, and April 17, 2012, the parties stipulated to dismissal of counts III and IV of the complaint. ECF Nos. 15, 16, 21, 22. The parties agree that count I should be dismissed, but disagree whether it should be dismissed with

---

[3] Zurich opposed only the motion to strike. ECF No. 20.

prejudice. ECF No. 17 at 7. On May 14, 2012, Tethys filed a surreply. ECF No. 24.

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

    B.    Count I: Breach of Contract

Count I alleges that Zurich breached the PA Agreement by refusing to negotiate in good faith and pay a commission for acquiring Presidio's HMO reinsurance business. ECF No. 1 ¶23. Zurich has argued that the PA Agreement does not require Zurich to pay Tethys a commission on business solicited and procured by Presidio, so count I should be dismissed with prejudice. ECF No. 14-1 at 7; ECF No. 18 at 2. Tethys agrees that, if Presidio customers are not covered by the PA Agreement, the breach of contract claim should be dismissed. ECF No. 17 at 8. It asks the Court to dismiss the claim without prejudice "until resolution of Tethys' claim for quantum meruit/unjust enrichment, in case Zurich takes an inconsistent position later in the litigation." *Id.* at 9.

As the parties disagree whether count I states a claim, the Court must determine whether the PA Agreement entitles Tethys to

commissions on business procured by another product administrator when Tethys procured that product administrator for Zurich. Tethys contends that it "produced" Presidio's HMO reinsurance business by introducing Zurich to Presidio, and its customers; thus, Tethys is entitled to commissions under Appendix B. ECF No. 17 at 9. Zurich contends that Appendix B does not cover commissions for "introductions" to other business partners, or for business procured by other program administrators. ECF No. 14-1 at 9.

In New York,[4] the interpretation of a contract begins with its words. *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998). If the provisions are plain and unambiguous, the Court determines the meaning of the terms as a matter of law. *See id.* A term is unambiguous if a reasonable person, viewing the term in context and objectively, would find it susceptible to only one meaning. *Id.* If a term is ambiguous, however, the Court

---

[4] The contract states that it is governed by New York law. ECF No. 1 ¶6. The Court applies Maryland choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Except in limited circumstances not present here, Maryland respects choice-of-law provisions in contracts, and applies the chosen law to issues that the contract explicitly addresses and those "which the parties could not have resolved by an explicit provision of their agreement directed at that issue." *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 336 Md. 606, 609, 650 A.2d 246, 248 (1994). Accordingly, the Court will apply New York law to the contract and quantum meruit claims.

may not resolve the ambiguity on a motion to dismiss.[5] *See Sarinsky's Garage Inc. v. Erie Ins. Co.*, 691 F. Supp. 2d 483, 486 (S.D.N.Y. 2010).

The PA Agreement's use of "produced" is ambiguous. "Produced" business could mean business that Tethys successfully solicited "directly from managed care organizations, health plans, and employer groups or through [Zurich's] partner brokers or distributers,"[6] or it could include all business that Zurich obtained as a result of its relationship with Tethys, whether the business was acquired directly, or through middlemen. As construction of the agreement would require a factual determination, a dispositive dismissal--for failure to state a claim--would be improper. *Id.* As the parties have agreed that Count I should be dismissed, it will be dismissed without prejudice.

C.   Count II

Count II seeks relief under a quantum meruit or unjust enrichment theory.[7] ECF No. 1 ¶¶25-30.  Zurich contends that

---

[5] Ambiguity "can arise either from the language itself or from inferences that can be drawn from this language." *Alexander & Alexander*, 136 F.3d at 86.

[6] ECF No. 14-2 Appendix A Art. III.

[7] In New York, "quantum meruit and unjust enrichment are not separate causes of action[:] . . . unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit . . . is one measure of liability for the breach

Tethys has not pled the elements of quantum meruit or unjust enrichment, the PA Agreement bars quasi-contractual claims, and the Statute of Frauds bars recovery. ECF No. 18 at 3.

Unjust enrichment occurs when

> (1) the [defendant] was enriched, (2) at [the plaintiff's] expense, and (3) . . . it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered.

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 1110 (2011). To recover in quantum meruit, the plaintiff must show unjust enrichment, and:[8]

> (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (internal quotation marks and citations omitted). An express agreement or promise is unnecessary in a quantum meruit claim; such an agreement or promise usually creates a contract, which would pre-empt a quasi-contractual recovery. *Tesser v. Allboro Equip. Co.*, 756

---

of such a contract." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (internal quotation marks and citations omitted); *see also Snyder v. Bronfman*, 13 N.Y.3d 504, 508-09, 921 N.E.2d 567, 569 (2009) (quantum meruit and unjust enrichment, in certain contexts, are "essentially identical claims").

[8] *Learning Annex Holdings, LLC v. Whitney Educ. Grp., Inc.*, 765 F. Supp. 2d 403, 413 (S.D.N.Y. 2011) ("[A] plaintiff must show unjust enrichment before it can recover under quantum meruit.").

9

N.Y.S.2d 253, 254 (N.Y. App. Div. 2003).[9] The expectation of compensation must be reasonable. *Liebowitz v. Cornell Univ.*, 584 F.3d 487, 509 n.10 (2d Cir. 2009). Expectation of compensation may be shown by the parties' course of conduct. *Forman v. Guardian Life Ins. Co.*, 908 N.Y.S.2d 27, 31 (N.Y. App. Div. 2010).[10]

Accepting the allegations in the complaint as true and viewing them in the light most favorable to Tethys,[11] the

---

[9] Zurich's arguments to the contrary are misplaced. ECF No. 14-1 at 12-13. The requirements of contract law, including implied-in-fact contracts, do not apply to quasi-contractual claims. *Liebowitz v. Cornell Univ.*, 584 F.3d 487, 509 n.10 (2d Cir. 2009). In *Leibowitz*, the Second Circuit affirmed summary judgment for the defendant because Liebowitz had neither alleged nor proven that her expectation of compensation was reasonable: she had not asked for compensation before performing the services, and the school policy made clear that Liebowitz's services would be accepted "on a voluntary basis only." 584 F.3d at 507.

[10] In *Forman*, Forman performed audits for Guardian between 2003 and 2008. His contract expired in 2006, but he alleged that "the agreements nevertheless continued to be in effect based on the parties' course of conduct." 908 N.Y.S.2d at 29-30. Based on that allegation, the Appellate Division held that Forman had stated a claim for breach of contract--under the theory that there had been assent to extend the contract--and quantum meruit/unjust enrichment--under the theory that there had been no assent. *Id.* at 31.

[11] Tethys contends that it will prove "that Zurich 'requested' [its] services, and agreed to market a team relationship with Presidio and Tethys." ECF No. 17 at 12. In support, it refers to a series of emails not attached to the complaint. *See id.* Material outside the complaint is not properly considered on a motion to dismiss. *See Iqbal*, 556 U.S. at 678-79. The complaint does not allege that Zurich requested the services. It states only that "Tethys successfully introduced Zurich to

complaint states a claim for unjust enrichment/quantum meruit. The complaint alleges that Tethys and Zurich had a business relationship in which Tethys brought business to Zurich, and Zurich compensated it for that business. ECF No. 1 ¶¶6-8. Zurich had promised to compensate Tethys for business Tethys "produced." ECF No. 14-2 Appendix B. If Presidio's business was not within the PA Agreement, as discussed above, Tethys's belief that it did and its expectation of compensation--though incorrect--could be reasonable. Accordingly, Tethys has alleged a reasonable expectation of compensation.

Tethys has alleged the other elements of quantum meruit. ECF No. 1 ¶¶18, 25-30.

Zurich also contends that the PA Agreement bars the claim because it states that Tethys's "sole remuneration for all services and duties" it performs under the agreement was its commissions as provided in Appendices A and B. ECF No. 18 at 6-7. For the quantum meruit claim, Tethys has alleged that its introduction of Zurich to Presidio was not "under th[e PA] agreement." ECF No. 14-2 (PA Agmt.) Art. IX §9.01. Accordingly, the PA Agreement does not bar the quantum meruit claim. See Forman, 908 N.Y.S.2d at 31.

---

Presidio," and after the introduction, Zurich and Presidio" agreed to market Tethys's products. ECF No. 1 ¶18. A request for services is not necessary if the course of conduct shows that the plaintiff's expectation of compensation is reasonable. See Forman, 908 N.Y.S.2d at 31.

Finally, Zurich argues that New York's statute of frauds bars the quantum meruit/unjust enrichment claim. ECF No. 18 at 8-9. In New York,

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . . [i]s a contract to pay compensation for services rendered in . . . negotiating the purchase, sale, . . . or . . . a business opportunity . . . . "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the trans-action. *This provision shall apply to a contract implied in fact or in law to pay reasonable compensation.*

N.Y. Gen. Oblig. Law § 5-701(a)(10) (emphasis added). The statute of frauds applies to quantum meruit claims for "compensation for services rendered in finding and negotiating a business opportunity." *Snyder v. Bronfman*, 13 N.Y.3d 504, 509, 921 N.E.2d 567 (2009). Tethys urges the Court to ignore the New York Court of Appeals's holding. ECF No. 24 at 5.[12] "[A]bsent extraordinary circumstances," a federal court determining state law must follow the law of the state's highest court. *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997,

---

[12] "Curiously, New York courts have . . . ignor[ed] the 'purchase, sale, exchange, renting or leasing' requirements of the statute. . . . [T]his Court should follow the plain language of the statute, and find that it does not apply here." ECF No. 24 at 5.

1002 (4th Cir. 1998). Tethys has not shown extraordinary circumstances here; the Court will follow *Snyder*.

The New York statute of frauds required Tethys to allege writings that show its reasonable expectation of compensation. *See Vioni v. Am. Capital Strategies Ltd.*, No. 08-2950, 2011 WL 4444276, *3 (S.D.N.Y. Sept. 26, 2011).[13] The PA Agreement is such a writing because it may arguably be interpreted as inviting Tethys to procure business--like Presidio's--for Zurich. *See* Part II.B, *supra*. The quantum meruit claim satisfies the statute of frauds and will not be dismissed.[14]

III. Conclusion

For the reasons stated above, Zurich's motion to dismiss counts I and II will be denied. Count I of the complaint will be dismissed without prejudice.

_5/31/12_  
Date

_William D. Quarles, Jr._  
United States District Judge

---

[13] For example, a written request from the defendant for services, and a writing showing that the parties expected "that the services were not to be performed gratuitously." *Vioni*, 2011 WL 4444276, *3 (internal quotation marks and citation omitted).

[14] The Court bears in mind that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

13